This suit is brought to compel the reinstatement of complainant Suter, who was discharged by defendant from his employment as a bus driver. He was dismissed on December 1st, 1942, on the charge that on November 24th he had failed to register four fares. Joined as parties complainant are a national and a local union to which he belonged, together with the president of the local union.
It is the contention of complainants that the discharge of Suter was in violation of the provisions of a collective bargaining agreement between the unions and the bus company in that he did not receive a fair trial in accordance with the provisions of the agreement. It is contended by defendant that at the time of the commission of the offense and of the *Page 409 
discharge there was no collective bargaining agreement in force between the parties, and that even if there had been, the provisions of the agreement claimed by complainants were satisfied. It is essential therefore to decide first whether the alleged agreement was in force, since if there was none, Suter would be limited to an action at law for wrongful discharge, and there could be no enforcement in equity.
The issues were bitterly contested, and on final hearing a great mass of testimony was taken, with sharp divergences as to many of the facts, chiefly however as to the hearings on the charge against Suter.
In 1941, another of a series of collective bargaining agreements was signed between the unions and the bus company. It was dated September 15th, 1941, and contained the following provision:
"This contract as agreed upon shall be effective as of September 15, 1941, and shall remain in full force and effect for a period of one year and thereafter, subject to thirty days notice in writing by either of the signatories hereto of either cancellation or change."
In August, 1942, the unions gave due notice that they desired changes in rates of pay and hours and conditions of work. Negotiations were entered into on the matters and continued until close to the 1st day of October, 1942, when changes favorable to the employees were agreed on. No formal new contract was signed at the time, but the bus company prepared to carry it into effect. Checks at the increased rates of pay were drawn, ready for delivery on the next pay day. At this juncture the President, on October 3d 1942, issued his executive order stabilizing wages and salaries. In doubt as to whether the increase was forbidden by the Presidential order, the bus company held up payment of the increase, until it obtained a ruling of the War Labor Board. On November 26th it received word that the proposed adjustment of wages was permissible, under General Order No 3, which approved wage increases formally determined and communicated to the employee, or put into effect before October 3d 1942, even if not provided by written agreement. Upon receipt of this permission the bus company *Page 410 
paid the arrears on November 28th, 1942, and continued at the new rate. There had been no matters in dispute between the employees and the company since October. For one reason or another, a new formal contract was not immediately executed but was signed on December 19th, 1942. It contained the following, identical, except for the change in the year, with the 1941 contract:
"This contract as agreed upon shall be effective as of September, 1942, and shall remain in full force and effect for a period of one year and thereafter, subject to thirty days notice in writing by either of the signatories hereto of either a cancellation or a change."
The provisions of the two written agreements, that of September, 1941, and the dated back one signed December, 1942, were identical so far as they provided against unjust dismissal of an employee, with the method of conducting trials on charges, and no changes in these provisions were discussed. The formal document signed in December was merely evidentiary of the agreement actually arrived at, and considered as binding, and in fact put into effect by the parties before the controversy affecting Suter arose. This was expressly acknowledged by the provision making the effective date September, 1942. In Suter's case, the bus company seems to have at the time admitted the obligation, for it proceeded in what it considered compliance, although with its own interpretation of the requirements.
I find therefore that the provisions as to dismissals of employees, as finally embodied in the contract dated as of September 15th, 1942, were in force and effect at the time of Suter's alleged offense and the hearings thereon.
There remains the question as to whether these provisions were complied with in his case. The relevant clauses are as follows:
"Operators `will not be suspended or dismissed without a fair and impartial investigation.'
"Complaints, including those of employees of the employer against operators must be in writing, signed by the complainant with his or her address, and the complainant, if in the employ of the employer, shall be present at any hearing held with respect to any such complaint." *Page 411 
A right of appeal to a higher officer of the employer was given to any ruling. There were various provisions in regard to formal notices, times for hearings, the presence of more than one member of the grievance committee and other procedural matters. Some of these were not technically complied with, with failures of both sides, but both sides appear to have waived such technicalities, so that only the real point at issue need be considered.
There is a sharp conflict of testimony as to what took place in regard to the charges against Suter. These facts are undisputed however: that Del Torre, the manager of the bus company, notified Suter and Riha, the local members of the grievance committee, on November 27th, 1942, that Suter was accused of failing to report fares and that a hearing would be had the next day; that on the 28th Suter and Riha appeared and the matter was not finally determined; that on December 1st, 1942, Suter appeared before Del Torre, accompanied by three members of the grievance committee and counsel, and that after a discussion Del Torre announced that Suter was discharged.
Complainants' witnesses say there was no hearing on November 28th, and that they insisted on an adjournment so that the entire grievance committee could be present. Del Torre says there was a hearing, that he found Suter guilty, that the meeting on December 1st was arranged for an appeal to his superior officer, Capitani, the president of the bus company, and that when Capitani was late, it was agreed to go ahead without him. It is unnecessary, however, to resolve these conflicts in view of the real issues.
The sole basis for the charge against Suter was that a spotter had reported to Del Torre that Suter had failed to report four fares. Suter denied his guilt, and first he and Riha on the 28th, and the representative of the unions on December 1st, demanded that the spotter be produced. Del Torre refused and on the 1st, after a heated discussion, said to Suter "You are fired."
At the final hearing it was testified that the bus company does not itself employ spotters, but engages an independent investigating company which hires spotters and makes reports *Page 412 
to various corporations which engage its services. The bus company excuses its refusal to produce spotters on the ground that if their identities became known their usefulness would disappear. It also contends that under the clause quoted above it need not produce them since they are not employees of the bus company. Technically this position is sound, although doubtless the bus company would have little difficulty in arranging for the production of spotter. It may well be remarked at this point, that in all court proceedings undercover operatives are compelled to come out into the open to make proof where necessary to sustain a charge.
The essence of the complaint here is that the bus company has violated the collective bargaining agreement which guarantees employees "a fair and impartial investigation." Suter was dismissed solely on the unproduced report of an unknown person. Del Torre had no knowledge of the alleged facts, which Suter denied. He had no chance to confront his accuser nor to examine him at that time. His accuser was not produced until the last day of the trial before me in the spring of 1944. His dismissal was an arbitrary act, which cannot be sustained.
The fact, as claimed by the bus company, that in previous instances the production of the spotter was not finally insisted on, is of no avail in the present instance, for it clearly and abundantly appears here that the unions definitely stated that in the present matter the right of confrontation was demanded. The dismissal was made with full notice that Suter stood on his rights.
It may be added that an attempt to settle this controversy was made in the various governmental agencies dealing with labor disputes, without success, whereupon this suit was brought.
A decree will be advised in accordance with this opinion. *Page 413